**Margaret J. NENSEL, Plaintiff,**

v.

**PEOPLES HERITAGE FINANCIAL GROUP, INC., et al., Defendants.**

Civ. No. 91–324–P–C.

United States District Court, D. Maine.

Jan. 8, 1993.

Stanley Bernstein, Kreindler & Kreindler, New York City, Jeffrey Thaler, Berman & Simmons, P.A., Lewiston, ME, for plaintiff.

Robert Frank, Verrill & Dana, Portland, ME, for defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART MOTION OF PLAINTIFFS' COUNSEL FOR APPROVAL OF COUNSEL FEES AND EXPENSES

GENE CARTER, Chief Judge.

This is a class action brought on behalf of the named Plaintiff and members of a certified class to recover damages from Defendants for alleged stock fraud. Following appropriate class-action procedures, the Court on October 7, 1992, provisionally certified the plaintiff class, provisionally approved a Stipulation of Settlement, and ordered a Plenary Hearing on Final Approval of the Proposed Settlement of Plaintiffs' Claims Herein ("Provisional Order," Docket No. 56).

The Plenary Hearing was held on December 17, 1992, in open court. No objections to final approval of the proposed settlement had been filed, as required by the Provisional Order, prior to the hearing, and no objectors appeared at the hearing. The Court, on the date of the Plenary Hearing, finally certified the plaintiff class and finally approved the proposed settlement as set forth in the Stipulation of Settlement (Docket No. 54), reserving for later decision the issue of whether, in approving the application of Plaintiffs' counsel for reasonable attorneys' fees (Docket Nos. 58–62), Plaintiffs' counsel were entitled to application of a multiplier to the finally computed "lodestar" fee as a fee enhancement for contingency or other factors. In a colloquy with counsel at the Plenary Hearing, the Court informally approved the total lodestar fee of $249,405 and reimbursable expenses of $61,399.68. Transcript of Plenary Hearing of December 17, 1992, at 11–12. The Court reserved decision, however, "only in order to determine the applicability of the multiplier." *Id.* at 12.

In the Motion for Approval of Attorneys' Fees, Plaintiffs' counsel seek the application of a multiplier of 1.2 to the lodestar fee as computed therein,[1] which would have yielded

---

1. In the motion (Docket No. 98) at 2, the lodestar fee was computed at $246.877.50. Plaintiffs' counsel reckoned the total fee with a 1.2 multiple at $296,253, making the effect of the application

an additional fee award, as an enhancement for contingency or other factors, of $49,375.50. The issue of the appropriateness of such additional fees was generated by the Court in a conference of the Court and counsel before the Plenary Hearing and was raised in light of the decision of the United States Supreme Court in *Burlington v. Dague,* 505 U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), in which the Court held that a court, in determining a reasonable attorney's fee under designated fee-shifting statutes, could not properly enhance the fee award above the lodestar amount to reflect the risk of a contingent fee arrangement. *Dague,* 505 U.S. at ——, 112 S.Ct. at 2639–40, 120 L.Ed.2d at 454. Plaintiffs' counsel were permitted to file a Supplemental Memorandum (Docket No. 64A) after the Plenary Hearing on the issue of whether the thrust of the rationale of *Dague* prevents approval of the multiplier in this case.

Now before the Court for action is this single reserved issue. The Court hereby APPROVES a reasonable "lodestar" attorneys' fee for all Plaintiffs' counsel herein in the amount of Two Hundred Forty–Nine Thousand Four Hundred Five Dollars ($249,405.00) and reimbursable expenses of Sixty–One Thousand Three Hundred Ninety–Nine Dollars and Sixty–Nine Cents ($61,399.69), for a total amount of Three Hundred Ten Thousand Eight Hundred Four Dollars and Sixty–Nine Cents ($310,804.69). The Court DENIES the application of an enhancement of the lodestar fee for recognition of contingency or other factors[2] for the reasons that follow.

The Court has commented at some length on the *Dague* case in a recent common-fund fee case as follows:

The United States Supreme Court recently held in *City of Burlington v. Dague,* [505] U.S. ——, ——, 112 S.Ct. 2638, 2639, 120 L.Ed.2d 449, 60 U.S.L.W. 4717, 4717 *[sic]* (U.S. June 24, 1992), that the enhancement for contingency of a fee award beyond the lodestar amount is not permitted under the fee-shifting statutes at issue. The Court noted that "the risk of loss in a particular case is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *Id.* at ——, 112 S.Ct. at 2641. The second factor is ordinarily reflected in the lodestar—"either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *Id.* at ——, 112 S.Ct. at 2641. With respect to the first factor, the Supreme Court noted:

The first factor ... is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a factor that *always* exists (no claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases. Moreover, the consequence of awarding contingency enhancement to take account of this "merits" factor would be to provide attorneys with the

---

of the designated multiple an increase in the fee of $49,375.50.

At the Plenary Hearing, after the Court had fully scrutinized, *see Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir.1991), the fee application and its supporting materials, counsel agreed, and the Court found, that the total lodestar fee for Plaintiffs' counsel was $249,405. Transcript of Plenary Hearing at 11. Application of the 1.2 multiple will now, therefore, yield enhancement of the lodestar fee in the amount of $50,881.

**2.** Plaintiffs' counsel have sought to alternatively base their claim for enhancement of the lodestar fee upon the factors of "quality of representation" and "the result obtained." Memorandum in Support of Application for Legal Fees and Expenses (Docket No. 59) at 11–12 and Supple-

mental Memorandum (Docket No. 64A) at 5. Assuming, without deciding, that enhancements of the lodestar fee are permissible under *Dague* to recognize these factors, the Court has concluded here, after meticulous scrutiny of the fee-setting record, *see Weinberger,* 925 F.2d at 525, that these factors are fairly taken into account in this case in the lodestar fee here approved by the hourly rates of counsel, the magnitude of the total fee, and the relationship of the amount of that fee to the total amount of the settlement obtained, and that enhancement of the lodestar fee on these bases is not necessary in order for Plaintiffs' counsel to be reasonably compensated herein. The Court finds that Plaintiffs' counsel are fairly compensated by the lodestar fee which the Court has approved.

same incentive to bring relatively merit-less claims as relatively meritorious ones.

*Id.*

The Supreme Court's recent pronouncement has no direct bearing on the instant case in that the Court cannot deny a contingency-based multiplier, based on the *Dague* opinion, because this case does not involve a fee-shifting statute. *Nonetheless, the Dague Court's policy rationales in denying a contingency-based multiplier seems to be equally applicable here.*

*Weinberger v. Great Northern Nekoosa Corp.,* 801 F.Supp. 804, 825, n. 59 (D.Me. 1992) (emphasis added). The Court there went on to find on the substantive fee determination, "that, even if a contingency-based multiplier may be *theoretically* available in this type of case, such a multiplier is not justified here, based on the evidence in the record." *Id.* at 826 (emphasis in original).[3] Hence, the Court had no need to address the applicability of the holding in *Dague* to a common- or equitable-fund fee case and did not do so.[4]

Having once again carefully studied the reasons put forth in the *Dague* opinion as to why a multiplier-based enhancement is not warranted, the Court can see little, if any, basis to distinguish in the application of the holding in *Dague* between fee-shifting and common-fund cases. The Court's reasons for rejecting the nature of contingency as a justification for such enhancement is persuasive here as in *Dague.* As the Court there noted:

Contingency enhancement calculated on *any* class-wide basis, therefore, guarantees *at best* ... that those cases within the class that have the class-average chance of success will be compensated according to what the "market" requires to produce the services, and that *all cases* having above-class-average chance of success will be overcompensated.

*Dague,* 505 U.S. at ——, 112 S.Ct. at 2642, 120 L.Ed.2d at 458. This consideration applies to any contingency enhancement in *any* class action case, whether under a fee-shifting statute or in the circumstances of a common fund.

Further, the objection in *Dague* that any contingency enhancement violates the fee-shifting statute requirement, that only a *prevailing* party is eligible for recovery of any fee by compensating counsel (on the basis of averages) for cases in which they do not prevail, serves similar policy objectives in common-fund cases. Even in a common-fund case, the reasonableness of attorney compensation is to be determined within the framework of the particular case. Counsel qualify for fees in such cases almost exclusively *if they prevail.* This is the most weighty incentive provided to counsel to undertake difficult, high-risk class-action cases. While it is desirable to compute fees fairly to encourage counsel to undertake such cases where counsel might not otherwise be available, it is enough to provide sufficient motivation to counsel to have them understand that *where they prevail,* they have a sure expectation that fees will be fairly determined in the circumstances of the case and a certainty that they *will be paid.*

Enhancement for contingency in common-fund cases will *also* have the effect of compensating (on the basis of averages) counsel for services in cases where they have not prevailed and will encourage the bringing of weak and unfounded class action suits. The prospect of guaranteed fair compensation of fees, and of payment of such fees where counsel prevail, is the proper means of encouraging the availability of counsel. The Court noted in *Dague* that a fair "lodestar" fee generally exceeds a purely contingency-based fee. *Dague,* 505 U.S. at ——, 112 S.Ct. at 2643, 120 L.Ed.2d at 458–59. Contingency enhancement will, therefore, result

---

3. The Court also denied a multiplier-based enhancement for exceptional quality of the legal services rendered or for the results obtained by counsel. *Weinberger,* 801 F.Supp. at 826–27.

4. It is to be noted also that the Court's consideration of the substantive fee determination in

*Weinberger* was *in its entirety* an alternative ground of decision, the Court having previously found that counsel were entitled to *no* fee because of the insubstantiality of the effect of their exertions on the outcome of the tender offer. *Weinberger,* 801 F.Supp. at 811.

in double-counting in the determination of fees.

This Court's continuing conviction, that the reasons set forth in *Dague* for not awarding contingency fee enhancement in that case apply with equal force in a common-fund case, has recently been recognized in this circuit:

> Although *Dague*'s holding technically only applies to contingency enhancements involving fee-shifting statutes, the Court's reasoning applies with equal force to multipliers in the context of equitable fund cases. Rather than relying on statutory interpretation to reach its holding, the *Dague* Court examined the policy reasons behind contingency enhancements and concluded that these reasons did not support their use. Courts in equitable fund cases have employed the same reasons, now discredited by the *Dague* Court, in deciding whether to add contingency multipliers. *See, e.g., In re "Agent Orange" Product Liability Litig.*, 611 F.Supp. 1296, 1310–14 (E.D.N.Y.1985) (considerations in determining whether to add a multiplier include the risk of failure, the complexity of the issues, and the demonstrated skill of the attorneys), *aff'd* in part, *rev'd* in part on other grounds, 818 F.2d 226 (2d Cir.1987); *Purdy v. Security Savings & Loan Ass'n,* 727 F.Supp. 1266, 1276 (E.D.Wis.1989) (factors included difficulty of plaintiff's case, considering the legal and factual complexity and probability of defendant's liability; and risk of loss, considering the potential for uncompensated hours and out-of-pocket expenses). For example, among the reasons given by Judge Acosta to justify a multiplier in this case was the risk of non-recovery and the quality of representation. *I can discern no logical distinction between an equitable fund case and a fee-shifting case that would cause these reasons to be worthwhile in an equitable fund case, but not in a fee-shifting case.*

*In re: Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 619 (1st Cir.1992) (Lay, J., sitting by designation, concurring) (emphasis added) (footnote omitted) (hereinafter *"Nineteen Appeals "*). While counsel here assert that contingency fee enhancement has been accepted in the First Circuit, Supplemental Memorandum (Docket No. 64A) at 3–5,[5] the

---

**5.** Plaintiffs' counsel attempt to rely on *Nineteen Appeals* to establish that the Court of Appeals has, since *Dague*, approved a contingency enhancement in a common-fund case:

> In vacating the award the First Circuit [Court of Appeals] stated that the "court's belated shift from a percentage approach to a lodestar approach raises serious questions" thereby indicating that the First Circuit [Court] is amenable to a percentage-based attorney's fee award from a common fund.

Supplemental Memorandum (Docket No. 64A) at 4. Careful study of the entire opinion in *Nineteen Appeals* brings this Court to the conclusion that counsel's contention overstates the scope of the decision there made. The majority holding in *Nineteen Appeals* is that the substantive fee determination made below must be overturned because *the procedures* used to make that determination violated due process requirements of fundamental fairness. The Court never addressed, for purposes of appellate review, the substantive fee determination itself. The Court *held, in esse,* that whatever the fee award was and however it was arrived at as a fee determination, it was invalid because the procedures employed, apart from any substantive rules of fee-determination law, and deprived some interested parties of their due process rights.

Thus, the holding cannot be construed as an endorsement of any method for assessing the reasonableness of an attorney's fee or of any specific rule of law in respect thereto. The case was remanded for a new, constitutionally sufficient, fee-approval process to be employed to determine anew the fees to be awarded to counsel. No approval of contingency enhancements or, for that matter, of any other element of the fee award appealed from is expressed or is properly to be implied from the Court's opinion or action. The case simply does not address that issue.

It may well be that the case will come back to the Court of Appeals in future and that the historical facts of the case, the words of the Court in its most recent opinion, history *a la Dague,* or a combination of all three, may have painted the Court at that time into a tightly confined analytical corner. It is clear, with only modest thought, however, *if that were to occur,* that a blanket acceptance of contingency enhancements in common-fund fee cases is not the sole method of extrication of the Court from any such confining cerebral environment. Especially is it not so in the face of the force and persuasiveness of the opinion in *Dague.* An analytical paradigm so pregnant with open possibilities of analysis is not to be thought sufficient to contain the analytical ingenuity of our Court of Appeals from pursuit of what it then sees to be the appointed resolution of this issue. This Court believes it likely that

fact remains that no case exists in this circuit where a court has allowed or affirmed allowance of such an enhancement in a substantive fee determination since publication of the opinion in *Dague*. Only this Court, in *Weinberger*, and Judge Lay, in *Nineteen Appeals*, have opined on the question and both agree that there should be no distinction made in the application of the rule between fee-shifting and common-fund cases.[6] In neither case does the Court decide the issue. It is, therefore, clear that the issue is an open one in this circuit.

The Court hereby *CONCLUDES* that a multiplier-based enhancement of the approved lodestar fee is not appropriate in this case for the same reasons expressed in *Burlington v. Dague*, 505 U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). It is hereby ORDERED that the requested enhancement be, and it is hereby, DENIED.

*Dague* and Judge Lay's *obiter dictum* in concurrence in *Nineteen Appeals* will ultimately carry the day in common-fund fee cases on this issue. In any event, *Nineteen Appeals* does not now prescribe any binding rule of decision on the issue.

**6.** Of the cases cited by counsel, only *Weinberger*, *Nineteen Appeals*, and *In Re: San Juan Dupont*

*Plaza Hotel Fire Litigation*, 768 F.Supp. 912 (D.P.R.1991), are First Circuit cases. In the first two cases, the Court did not reach consideration of approval of a contingency enhancement because of the decisional posture of the cases. The third case was decided *before* the opinion in *Dague* was issued.