**UNITED STATES PUBLIC INTEREST RESEARCH GROUP et al., Plaintiffs**

v.

**STOLT SEA FARMING, INC. and Atlantic Salmon of Maine, LLC, Defendants**

Nos. CIV. 00–149–B–C, CIV. 00–151–B–C.

United States District Court, D. Maine.

Feb. 9, 2004.

Bruce M. Merrill, Portland, ME, Charles C. Caldart, Seattle, WA, David A. Nicholas, Joseph J. Mann, Joshua R. Kratka, Boston, MA, for United States Public Interest Research Group, Stephen E. Crawford, Charles Fitzgerald, Plaintiffs.

Peter W. Culley, Pierce, Atwood, Elizabeth R. Butler, Pierce, Atwood, Portland, ME, for Stolt Sea Farm Inc, Defendant.

## ORDER GRANTING PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS

GENE CARTER, Senior District Judge.

Now before the Court are Plaintiffs' requests for attorneys' fees and costs in two related cases. Plaintiffs request an award of fees and costs in the following amounts: $631,468.96 to be assessed against Stolt Sea Farm ("Stolt") and $729,028.51 to be assessed against Atlantic Salmon of Maine, LLC ("ASM"). Plaintiffs' originally requested of Stolt $589,592.34 in attorneys' fees and $41,876.62 in reimbursable expenses of litigation authorized by 33 U.S.C. § 1365(d), and of ASM $686,635.34 in attorneys' fees and $42,393.17 in reimbursable expenses. Plaintiffs have also requested that the Court award them $10,270.49 in a Bill of Costs against Stolt and $10,708.69 in a Bill of Costs against ASM, as authorized by 28 U.S.C. § 1920.

On November 3, 2003, Plaintiffs filed an "Errata to the Declaration of Joshua R. Kratka" wherein it is asserted that because of errors in attorney time sheets, the amount of fees requested in its original petition of Stolt should be reduced by $1,857, and the amount of fees requested in its original petition of ASM should be increased by $1,795. The errata changes consist of four types: addition of items inadvertently left off the original accounting, correction of incorrectly input hours or dollar amounts, correction of hourly billing rate, and items erroneously attributed to both ASM and Stolt. Without objection from Defendants, the Court accepts the substance of the changes made by the errata time sheets—Errata to Kratka Declaration Exhibits A, B, and C—and will, thus, consider Plaintiffs' request for attorneys' fees to be $587,735.34 as against Stolt and $688,430.34 as against ASM.

### I. Discussion

The factual and legal issues in these cases were numerous and complex. These cases were not the typical Clean Water Act suit, which is usually brought to enforce a discharge limit specified in a National Pollutant Discharge Elimination System ("NPDES") permit. Indeed, the U.S. Environmental Protection Agency ("EPA") had in these cases wholly failed to promulgate effluent guidelines generally applicable to the aquaculture industry in execution of its statutory duties. Likewise, the EPA's Maine counterpart, the Board of Environmental Protection ("BEP"), had failed to act to issue a discharge permit applicable to the aquaculture sites in question after having been delegated such duty by the EPA. These circumstances created a novel situation in which to litigate the Clean Water Act issues generated by the cases. Although a great deal of the complexity of these cases can be attributed to the fact that the relevant federal and state agencies had failed to create the necessary regulatory frame-

work and standards for the salmon farming industry, Plaintiffs also had to explore the legal effect of numerous state and federal regulatory schemes governing the other aspects of Defendants' operations. In addition, the vigor and tenacity with which Stolt and ASM defended each of these actions added immensely to the number of hours Plaintiffs' counsel had to work on these cases and to the difficulty of the challenges thus presented to them.

In the end, Plaintiffs achieved a high measure of success in both of these cases. Plaintiffs ultimately prevailed on their claims that ASM and Stolt were violating the Clean Water Act, in the contempt claim against ASM, and on all appeals. In doing so, Plaintiffs have vindicated an important societal interest in protecting the environment against unregulated and unlawful actions of Stolt and ASM—a key purpose of the Clean Water Act. In addition, Plaintiffs have established a legal precedent that can be expected to have a powerful deterrent effect, specific and general, in the future for the aquaculture industry and provide an object lesson for delinquent regulatory agencies.

## A. Attorneys' Hourly Rates and Number of Billed Hours

Under the Clean Water Act, the familiar "lodestar" method is used to calculate the amount of attorneys' fees. *See, e.g., City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Along with the request for fees and costs, Plaintiffs' attorneys have each filed declarations indicating the work performed and detailing the hours billed for that work. Plaintiffs' attorneys have also provided to the Court a statement of the number of years they have practiced law and have described their qualifications and areas of expertise in the practice of law. Plaintiffs'

attorneys have exercised noteworthy and commendable billing judgment by not billing for approximately one-quarter of the total hours committed by them to the prosecution of these cases.

■ Plaintiffs' lead attorneys, David A. Nicholas and Joshua R. Kratka, are senior attorneys employed by the National Environmental Law Center in Boston, Massachusetts. Those attorneys have requested hourly rates commensurate with other attorneys of similar experience in the Boston area—$310 per hour for core time and $170 per hour for noncore time. Plaintiffs have also submitted the Declaration of Attorney Paul Holtzman attesting to the reasonableness of their requested hourly rates by the standards of the Boston fee-market. Defendants object to the use of Boston rates, arguing that the Court should employ Portland, Maine market rates for their work. However, Plaintiffs have forcefully demonstrated that they sought, but were unable to employ, lawyers in Maine, other than Attorney Bruce M. Merrill, who were willing to take full responsibility for pursuing these cases or to act in any significant capacity in these cases.[1] In such situations, it is customary for the court to apply the relevant out-of-forum rates based on rates in the location that willing attorneys are found; in this case, Boston, Massachusetts. *See, e.g., Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983). The Court finds the hourly rates requested by Attorneys Nicholas and Kratka to be reasonable in the unique and complicated circumstances of these cases.

In their reply memorandum, Plaintiffs point out that Attorney Nicholas erroneously billed 1.5 hours each to Stolt and ASM at $310 per hour for his attendance at the deposition of Dr. Jeffery Hutchings.

---

1. Attorney Merrill is a generalist litigator who, prior to these cases, professed no specific expertise in environmental matters.

The Court will, accordingly, reduce Plaintiffs' fee request by $465 for each Defendant. The Court has thoroughly reviewed the time sheets along with the detailed time entries of each of the Plaintiffs' attorneys and finds the number of hours billed by them to be reasonable.

Attorney Joseph J. Mann, a Staff Attorney at the National Environmental Law Center who has been practicing for four years, billed for his work at a the Boston-based rate of $170 per hour. The Declaration of Attorney Paul Holtzman also attests to the reasonableness of this hourly rate in the Boston market for a junior attorney commensurate with Attorney Mann's experience. Defendants object to Attorney Mann's hourly reimbursement at Boston rates. The Court, having previously determined Boston rates to be appropriate in this case, finds Attorney Mann's hourly rate to be reasonable and finds as well that the number of hours billed by him is reasonable for the work he performed.

Plaintiffs seek $280 per hour for each of Attorney Bruce M. Merrill, an attorney in practice for twenty-five years and currently in private practice in Maine, and $280 per hour for Attorney Charles C. Caldart, a Washington attorney who has practiced for twenty-nine years and who works primarily for the National Environmental Law Center's Seattle office. Defendants object, arguing that Attorney Merrill's hourly rate is too high given that he had no experience in complex environmental litigation prior to this case and that he uses only one hourly rate for all his time in these cases. In support of this hourly rate, Attorney Merrill states that his "normal billing rate for representing clients in federal court actions is ... $280/hour." In addition, Attorney James T. Kilbreth attests, in an affidavit, to the reasonableness of Attorney Merrill's hourly rate in the Portland market.

After Defendants registered their objections, Plaintiffs suggested adjusting Attorney Merrill's hourly rate downward to $150 per hour for approximately 60 hours for his work for second-chairing depositions. The Court accepts this reduction and, accordingly, will reduce the fee charged to Stolt by $2,036.67 and reduce the fee charged to ASM by $3,694.17 on this account. Plaintiffs also acknowledge that Attorney Merrill's time entries on May 29, 2001, are incomplete and, accordingly, agree to reduce their fee request by $1,381.33 for each of ASM and Stolt. The Court otherwise finds that the hourly rates charged by Attorney Merrill and Attorney Caldart are reasonable and that the number of hours billed by them is reasonable.

## B. Compensation for Administrative Proceedings Work

■ Plaintiffs seek compensation for work in connection with the administrative proceedings before the State of Maine Department of Environmental Protection ("DEP") and the BEP. Although their involvement was voluntary, Plaintiffs seek to be compensated under the Clean Water Act for these efforts on the premise that they had to be informed of the provisions of the draft permits because the permits were an issue in this litigation and were considered by the Court in fashioning injunctive relief. In addition, Plaintiffs seek compensation for the time spent in connection with ASM's challenge, under the federal Data Quality Act, to the U.S. Fish & Wildlife Service and National Marine Fisheries Service's ("the Services") biological opinion regarding measures needed to protect wild Atlantic salmon from aquaculture escapees. Defendants object to the Court compensating Plaintiffs for the time devoted by Plaintiffs' attorneys to these administrative-type efforts. The Court agrees with Defendants, finding that this time spent by Plaintiffs' attorneys in connection

with those administrative proceedings is not compensable under the Clean Water Act. *See* 33 U.S.C § 1365(d). Accordingly, the Court will reduce Plaintiffs' fee request by $45,558 as against Stolt and $49,274 as against ASM for hours billed for work on "Data Quality Act Petition and BEP Permit Hearing and Appeal." In addition, the Court will reduce Plaintiffs' fees requested of each Defendant by $1,372.50 for "preparation of comments on draft MEPDES permit."

### C. Expenses

█ Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), expressly allows a court to award to a prevailing plaintiff the "costs of litigation." Plaintiffs seek to recover under this provision expert witness fees and expenses for the six experts who worked with Plaintiffs' counsel on the case. Defendants object to compensating Plaintiffs' expert witnesses generally because none of the bills are sufficiently specific about the services rendered to justify awarding those fees. Specifically, Defendants object to the inclusion of expert witness fees for Nicholas Fisher, who ultimately did not testify at trial. Defendants note that Attorney Kratka pledged in his application to seek only half of Dr. Fisher's fees; however, the total amount—136.5 hours—has been included in Plaintiffs' request for expenses. The Court has reviewed the expert witnesses' bills in these cases and finds them to include sufficient detail regarding the services rendered by the expert and that such services were necessary to the preparation of these cases. The Court will, however, reduce Plaintiffs' request for costs by $5,118.75 for each of ASM and Stolt, representing one-half of Dr. Fisher's fees. The Court finds that the one half reduction to Dr.

Fisher's fee properly compensates Plaintiffs for his role in assisting in the preparation of the case while recognizing a reduction based on the fact that he did not testify at trial.

In addition, Defendants object to the inclusion of expenses associated with the state discharge permit proceedings. As stated above, the Court will not allow compensation in these cases for services in connection with the state or federal permitting processes. Accordingly, the Court will reduce Plaintiff's request for costs by $2,115.72 for each of ASM and Stolt.

### D. Bill of Costs

Plaintiffs also seek reimbursement for certain litigation expenses paid by Plaintiffs which are normally taxable as costs pursuant to 28 U.S.C. § 1920. Defendants object only to the amount requested by Plaintiffs for copying costs. The Court has reviewed the documentation submitted by Plaintiffs in support of the copying costs requested by Plaintiffs and finds that they were reasonably necessary to the maintenance of this litigation. The Court will, therefore, award Plaintiffs, as statutorily authorized costs pursuant to 28 U.S.C. § 1920, $10,305.44 as against Stolt and $10,743.64 as against ASM.[2]

### II. Conclusion

Accordingly, it is **ORDERED** that Plaintiffs' Request for Attorneys' Fees and Costs be, and it is hereby, **GRANTED** in the amount of Five Hundred Thirty–Six Thousand Nine Hundred Twenty–One Dollars and Eighty–Four Cents ($536,921.84) for attorneys' fees and Thirty–Four Thousand Six Hundred Forty–Two Dollars and Fifteen Cents ($34,642.15) for reimbursable expenses as against Stolt and in the amount of Six Hundred Thirty–Two Thou-

---

2. This award of costs consists of the total amount requested by Plaintiffs on each Bill of Costs plus $69.90 for the reproduction of Plaintiffs/Appellees' brief, which the Court of Appeals for the First Circuit directed be included in costs.

sand Two Hundred Forty–Three Dollars and Thirty–Four Cents ($632,243.34) for attorneys' fees and Thirty–Five Thousand One Hundred Fifty–Eight Dollars and Seventy Cents ($35,158.70) for reimbursable expenses as against ASM. In addition, it is **ORDERED** that Plaintiffs' request for payment pursuant to 28 U.S.C. § 1920 of the Bill of Costs be, and it is hereby, **GRANTED** in the amount of Ten Thousand Three Hundred and Five Dollars and Forty–Four Cents ($10,305.44) as against Stolt and Ten Thousand Seven Hundred Forty–Three Dollars and Sixty–Four Cents ($10,743.64) as against ASM.