**Norma LEE, Plaintiff,**

v.

**JAVITCH, BLOCK & RATHBONE, LLP, Defendant.**

**No. 1:06–cv–585.**

United States District Court, S.D. Ohio, Western Division.

July 30, 2008.

872

Stephen R. Felson, Cincinnati, OH, Steven Charles Shane, Bellevue, KY, for Plaintiff.

Michael D. Slodov, Javitch Block & Rathbone LLP, Cleveland, OH, Vincent P. Antaki, Reminger & Reminger Co. LPA, Cincinnati, OH, for Defendant.

## ORDER

SANDRA S. BECKWITH, Chief Judge.

This matter is before the Court on Plaintiff's motion and supplemental motion for attorney's fees. (Docs. 152 and 191) For the following reasons, the Court concludes that Plaintiff is entitled to some, but not all, of the requested fees.

## FACTS

This dispute arose out of the debt allegedly incurred by Plaintiff Norma Lee. Defendant Javitch, Block & Rathbone, LLP, a law firm and debt collector, obtained a default judgment against Lee on behalf of its client, and then instituted a non-wage garnishment proceeding to collect the judgment. The garnished funds consisted largely of Lee's Social Security disability payments. Lee sued JB & R, alleging violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Ohio Consumer Sales Practices Act (OCSPA), Ohio Rev.Code § 1345.01, *et seq.*

After extensive motions and discovery, the case proceeded to trial. The jury found JB & R liable to Lee for violations of both statutes. The Court granted a partial remittitur of the verdict, but otherwise denied JB & R's post-trial motions for relief from the jury's verdict.

Lee now seeks an award of her attorney's fees under the FDCPA and the OCSPA, which permit recovery to successful plaintiffs. JB & R advances several arguments opposing any fee recovery, or for a substantial reduction in the requested lodestar amount of $137,132.75. JB & R

also opposes Plaintiff's request for a fee enhancement multiplier of 1.75.

Ohio law governing attorney fees recovery under the OCSPA appears to mirror federal law enunciated in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). See *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 145–146, 569 N.E.2d 464 (Ohio 1991), expressly addressing the standard for attorney fees awarded under Ohio Rev.Code § 1345.09(F)(2), the basis for Plaintiff's motion. Therefore, unless otherwise required, the Court will apply federal law to Plaintiff's petition under both statutes.

## DISCUSSION

The American rule has long been that litigants are typically responsible for their own attorney fees irrespective of the outcome of civil proceedings. Congress has legislated exceptions whereby prevailing parties may seek to recover costs from their opposition, in an attempt to "encourage consumers to act as 'private attorneys general.'" *Mann v. Acclaim Fin. Servs. Inc.*, 348 F.Supp.2d 923, 927 (S.D.Ohio 2004). The FDCPA is one such statute, providing that a successful plaintiff is entitled to recover from the defendant "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

JB & R offers multiple reasons why Lee is not entitled to the fees that she requests. The Court will address these reasons in the order presented by JB & R.

### 1. *Standing to Seek Attorney Fees*

■ Lee asserts that she has completed a "successful action" as that term is used in the FDCPA (the OCSPA refers to the "prevailing party"), and is entitled to her fees and costs. JB & R counters that Lee lacks standing to seek fees because her fee contract with her counsel is a "sham," is unconscionable, and consequently is void.

JB & R cites Mr. Felson's affidavit which states: "I have not received and will receive no fee from my client in connection with my work on this case. My fee arrangement with the Plaintiff is totally dependent upon an award of fees by this Court." (Doc. 152, Felson Affidavit) Mr. Shane's affidavit contains the same statement. (Doc. 152, Shane Affidavit) JB & R contends this is an admission that counsel "bargained for the Plaintiff's right to recover the entire statutory fee award for themselves." (Doc. 153 at p. 2) Such a bargain is not a reasonable contingent fee in a civil case, but amounts to a " 'proprietary interest in the cause of action or subject matter litigation the lawyer is conducting for the client,' which is void as a matter of law." *Id.* (quoting Ohio R. Prof. Conduct § 1.8(I)). Because the fee agreement is unlawful, JB & R suggests that Lee has no Article III standing to claim fees. JB & R asks this Court to order the production of the fee agreement and to hold an evidentiary hearing to evaluate its lawfulness.

JB & R cites several cases of marginal relevance to support its contentions. For example, it cites *Laster v. Cole*, 2000 U.S. Dist. LEXIS 8672 (E.D.N.Y. June 23, 2000) to seek an evidentiary hearing on the fee agreement. But in *Laster*, the attorney was sanctioned after he admitted to the court during oral argument that he had inflated the hours stated in his fee petition. There was no "evidentiary hearing" mentioned in the district court's opinion, nor any suggestion raised that his fee agreement was "unconscionable." Moreover, the district court actually awarded almost $6,000 in fees based upon a $200 FDCPA statutory damages award.

JB & R also cites *Pony v. County of Los Angeles*, 433 F.3d 1138 (9th Cir.), cert. den. sub. nom. *Mitchell v. LA County*, 547 U.S. 1193, 126 S.Ct. 2864, 165 L.Ed.2d

896 (2006), and *Manning v. Astrue*, 510 F.3d 1246 (10th Cir.2007). *Pony* stands for the unremarkable principle that the right to recover attorney's fees under 42 U.S.C. § 1988 is vested in the prevailing party, not the attorney. In that case, an attorney asserted a claim for statutory fees after his client accepted a settlement conditioned on the waiver of those fees. The attorney argued that his client lacked the capacity to waive statutory fees because their fee agreement prohibited her from doing so. The fee agreement stated:

> Client agrees to and hereby does irrevocably assign and transfer to Attorneys all of Client's rights and powers, whether contingent or vested or both, (a) to waive "prevailing party" status, (b) to waive, apply for, obtain judgment upon, collect, and/or receive any statutory attorney's fee award, and (c) to make and/or accept a "lump sum, including all attorney's fees" settlement offer. Client acknowledges and agrees that the foregoing assignment and transfer may make it more difficult for Client to settle the case, because Client will not possess the powers or rights to waive "prevailing party" status or the powers or rights to waive, apply for, obtain judgment upon, collect, and/or receive any attorney's fee award. Client hereby authorizes and directs the court to make any such attorney fee award and judgment thereon in Attorneys' names only and not in Client's name.

*Id.* at 1140. The Ninth Circuit held this agreement was invalid, as it expressly ceded to the lawyer the power to control settlement by refusing to give up the client's right to seek statutory fees. That right is not transferrable to the lawyer, whose ethical duty is to represent his client's best interests. That situation simply does not exist here, despite JB & R's suspicions to the contrary.

In *Manning v. Astrue*, a Social Security case, the client's EAJA fee award was subject to offset for federal student loans under the Debt Collection Improvement Act of 1996. Unlike the Social Security Act, which states that attorney's fees may be paid directly to the attorney from a claimant's past due benefits (up to 25%), the EAJA permits the prevailing party to recover fees. The lawyer's attempt to undo his client's loan offset was unsuccessful, because the EAJA fees awarded belonged to his client.

JB & R then asserts counsel's fee agreement must be unconscionable or unlawful because the primary obstacle to settlement was Plaintiff's attorney fees. JB & R questions whether Lee was properly "informed" that her lawyers structured their fee agreement to deprive her of her lawful contingent recovery. JB & R asserts that during the final pretrial conference, Lee's counsel told the court he had nearly 200 hours of time invested in the case, and was not "willing to negotiate" his fees. (Doc. 153 at p. 6)

Lee responds, incorrectly, that the most that was offered by the defendant in settlement was $250. The Court is well aware that substantially more than that was offered to plaintiff at various times during pre-trial settlement discussions. (See Doc. 85, Final Pre–Trial Order at Section VII, summarizing settlement discussions to that date.) However, the Court rejects JB & R's contention that counsel were unwilling to negotiate fees; the offer on the table at the pre-trial represents a substantial reduction from the hours invested through that date by Lee's counsel. The Court also notes that Ms. Lee was present at the pre-trial conference, and actively participated in her case through the trial.

Modern fee-shifting statutes unavoidably create some tension between a plaintiff's goal of redressing an injury, and her attorney's desire to be paid for services

rendered. This is especially true in the context of consumer statutes like the FDCPA, where the majority of cases involve statutory violations that cause no personal injury, and which support only modest statutory recovery. The ability to recover attorney's fees in these cases encourages competent counsel to accept these representations in order to vindicate consumers' rights. Lee's counsel have clearly stated that they agreed to accept only what this Court might award if Lee was successful in her claims. This arrangement does not, in this Court's view, amount to an improper acquisition of a proprietary interest in Lee's cause of action.

JB & R's repeated observation that "fee shifting statutes are the right of the Plaintiff, not the attorney" is accurate, but it is the Plaintiff here who is seeking attorney fees. The Supreme Court observed that the purpose behind federal fee-shifting statutes such as the FDCPA is to encourage "... attorneys to accept cases because of the express or implied promise of the plaintiff to pay the lawyer the statutory award, i.e., a reasonable fee, if the case is won." *Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). It would be more than passing strange to use this provision to wholly deny compensation to the successful lawyer. JB & R's arguments might be persuasive in atypical cases such as *Pony*, where the fee agreement effectively ceded control of the litigation to the lawyer. That is not the case here. The Court finds no reason to conduct an evidentiary hearing concerning JB & R's suspicions, and rejects its arguments that Lee lacks standing to seek an award of statutory fees in this case.

### 2. *Lodestar Amount.*

Like most fee-shifting statutes, the FDCPA permits recovery of **reasonable** attorney's fees. The first step is to determine the number of hours that counsel reasonably expended on the case. The Court must then determine a reasonable hourly rate. The product of those two numbers is the lodestar, a presumptively accurate determination of the reasonable fee. Then, the Court may adjust the lodestar based on factors such as the extent of a plaintiff's success, or commonalities among the plaintiff's claims. See *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir.1993).

### (A) *Reasonable Hourly Rate.*

■ Plaintiff requests $265/hour for Felson and $250/hour for Shane, as their normal billing rates reflect prevailing market rates within the relevant community. JB & R counters that these rates are inflated, and that Plaintiff has not produced satisfactory evidence establishing relevant community rates.

Both parties concede that "attorney's fees based on fair market rates is appropriate in order to further ... Congressional intent." *Mann v. Acclaim Fin. Servs.*, 348 F.Supp.2d 923, 927 (S.D.Ohio 2004). This rate is reasonable because it will attract competent counsel, but avoid a windfall. The hourly rate should accordingly reflect the skill and experience of the attorney, as well as the type of work involved. *White v. Cadle Co.*, 1999 U.S. Dist. LEXIS 15760, *7 (S.D.Ohio, Sept. 30, 1999). Plaintiff's attorneys must record the number of hours worked and their hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In addition, "the applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* In *Mann*, for example, plaintiff's counsel submitted evidence demonstrating his skill and experience in the field, as well as sworn affidavits from other attorneys attesting to the reason-

ableness of his rate. The court also relied on its familiarity with prevalent community rates in granting the attorney's motion. Even if a request for fees may seem excessive in light of the verdict, that alone does not compel a court to deny a fee petition as excessive.

JB & R submits an Ohio State Bar Association rate survey, indicating that the 2007 mean hourly rate for attorneys practicing in Greater Cincinnati is $217/hour, and the median is $200. (Doc. 153, Exhibit 1) JB & R cites *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618, n. 6 (6th Cir.2007), where the Sixth Circuit cited the OSBA's annual survey in reviewing hourly rates. That survey is a helpful reference point to be sure, but the mean or median rates for the group of attorneys who responded to OSBA's survey do not adequately take account of the experience and expertise of Messrs. Felson and Shane. That group of 106 lawyers undoubtedly includes new or newer lawyers. JB & R also notes that in *Mann v. Acclaim Fin.*, the district court awarded Shane a $200 hourly rate. However, that is a 2004 decision, and involved legal work performed in the prior years. Apparently, that is the rate Shane requested in that case. That rate fails to account for inflation and the additional experience Shane has gained since his work in that case.

JB & R is correct to note that Plaintiff failed to submit evidence regarding the prevailing market rate. She submitted no affidavits reflecting fees that similarly qualified attorneys have received in similar cases, and her fee petition referred to rates awarded experienced ERISA lawyers. In her Reply Memorandum, however, Plaintiff cites a very recent case in this district, approving a $250/hour rate for Shane in a FDCPA action. See *Hall v.*

*Bronson & Migliaccio*, S.D. Ohio Case No. 1:07–cv–255 (SJD).

This Court has often employed the baseline rates established by former Chief Judge Rubin in 1983, and applied a 4% yearly COLA increase, when determining reasonable hourly rates in this community.[1] Both Felson and Shane would be considered to be Senior partners in the Rubin framework (having 21 or more years of experience), and their requested rates are below that inflation-adjusted baseline rate ($128.34/hour in 1983 dollars, plus 4% annual COLA). The 2007 OSBA survey reflects that 220 lawyers throughout Ohio with 16–25 years in practice responded to the survey; the median rate for that group is $185, but the 75th percentile is $244, and the 95th is $325. This Court's general familiarity with the local market rates in the Southern District of Ohio, combined with the Rubin guidelines and the OSBA survey, are sufficient for this Court conclude that counsels' requested hourly rates are reasonable.

JB & R also objects to awarding this rate for time spent on secretarial or paralegal work, or for travel time, noting that "an award for attorney fees is by definition compensation for legal work ...". *Ferrero v. Henderson*, 2005 WL 1802134, *3, 2005 U.S. Dist. LEXIS 15246, *8 (S.D.Ohio, July 28, 2005). Felson concedes that his travel time should not be billed at requested hourly rate, and volunteers to reduce this amount by half. (Doc. 190 at 14) Plaintiff does not concede, however, that her attorneys' rate should be reduced for clerical work, as neither Felson nor Shane employ clerks to whom they could delegate such work. A Texas court addressed such a situation in *CWTM Corp. v. AM Gen. L.L.C.*, 2006 WL 1804623, *2,

---

**1.** See, e.g., *Kindel v. Continental Cas. Co.*, 2005 WL 1241975, 2005 U.S. Dist. LEXIS 9878 (S.D.Ohio, May 25, 2005); and *Dalesandro v. Int'l Paper Co.*, No. 1:01–cv–109 (S.D.Ohio, July 8, 2005).

2006 U.S. Dist. LEXIS 43905, *5 (S.D. Tex. June 28, 2006). But there, the attorney did not record his time on the case, and submitted no billing records at all to support the requested fees. The district court adjusted the hourly rate to account for clerical work, among other discounts.

Plaintiff's counsels' time records include a few entries that may reflect clerical or administrative work. Such entries are few, however. The Court rejects the suggestion implicit in JB & R's argument that lawyers should not perform tasks like placing telephone calls. Moreover, there is no requirement that a lawyer must employ a paralegal to do research or to draft pleadings. In this age of computerized document preparation and editing, it is far from clear that an attorney's time entry for "revise memo in opp." or "Draft MSJ" (See Doc. 153, Exhibit 3 to Felson Affidavit) reflects merely clerical as opposed to substantive legal work. The Court has reviewed the billing records submitted by counsel. The Court finds that the time spent is reasonable, and reflects time spent by attorneys doing the work necessary to prosecute this case. Felson's eight hours of recorded travel time on 5/16/2007 and 5/17/2007 will be reduced by one-half to four hours.

### (B) Reasonable Hours Expended.

■ The second step in determining reasonable attorney fees is insuring the reasonableness of the hours expended. Plaintiff maintains that all of the hours requested by her lawyers are reasonable. JB & R asserts that the request should be reduced for time spend on redundant and unnecessary tasks.

"An applicant for attorney's fees is only entitled to an award for time reasonably expended." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d 1319, 1327 (D.C.Cir.1982). Plaintiff must submit evidence supporting the hours her counsel worked on the case.

The defendant must then "demonstrate that a particular entry represents frivolous work." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir.1991). Typically, attorney's fees are not awarded for overkill, duplications, or hours spent in the pursuit of perfection when reasonable efforts would suffice. *Deal v. Hamilton County Dep't of Educ.*, 2006 WL 2854463, **7–8, 2006 U.S. Dist. LEXIS 76324, *23–*24 (E.D.Tenn., Aug. 1, 2006).

Plaintiff's attorneys have provided detailed invoices to support the hours they claim. JB & R contends the invoices include duplicative time, 34 hours of communication with co-counsel, which must be omitted. JB & R cites *Lemieux v. Guy*, 2006 WL 3626555, *4, 2006 U.S. Dist. LEXIS 84421, *12 (S.D.Ind., Nov. 20, 2006), where the court recognized that "conferences are necessary when multiple attorneys are reasonably involved," but ruled that the billing of a substantial amount of conference time manifested the attorneys' desire to inflate the fee request to "unreasonable levels." In *Lemieux*, however, the claim was simple, and the defendants offered judgment prior to the preliminary pretrial conference. Despite these facts, four lawyers worked on the case, which the district court described as simple.

Here, Plaintiff's claim was far from simple, and involved extensive motion practice prior to the final pre-trial conference. Moreover, Plaintiff notes that Defendant's counsel billed 70.4 hours for conferences among its co-counsel. The Court credits Plaintiff's counsels' affidavits, stating they divided discrete tasks between them to avoid unnecessary duplication of effort. This Court does not find the entries for conferences to be unnecessarily duplicative.

Plaintiff also notes that Defendant's lawyers billed about 300 hours more than her

counsel. "Obviously, the more stubborn the opposition the more time would be required ...". *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir.1977). "Those who elect a militant defense ... [are responsible for] the time and effort they exact from their opponents." *Perkins v. New Orleans Athletic Club*, 429 F.Supp. 661, 667 (E.D.La.1976). If JB & R believed that defense of Ms. Lee's case merited close to 800 hours of work, it seems entirely reasonable that Plaintiff's counsel would spend about 440 hours prosecuting her claims.

Through February 7, 2008, Felson spent 331.3 hours, of which four will be deducted for travel to and from Cleveland. At a rate of $265/hour, Mr. Felson's lodestar calculation comes to $87,795. Mr. Shane spent 109.9 hours through February 7, 2008. At a rate of $250/hour, Mr. Shane's lodestar calculation comes to $27,475.

### 3. *Lodestar Adjustments.*

Although the lodestar offers a presumptively accurate calculation of attorney's fees, courts may adjust the figure to account for certain factors pertinent to the valuation of an attorney's services. JB & R asserts that Plaintiff's unsuccessful class certification and summary judgment motions, and an unfiled motion to strike JB & R's expert, reflect Plaintiff's marginal success. Plaintiff counters that she could not have envisioned a more successful result from the outset of the case.

Attorney's fees are typically not awarded for unsuccessful claims, as fees should be awarded solely to "prevailing parties." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. But "where the successful issues in a lawsuit are not easily segregated from the unsuccessful issues," the court's focus turns to the overall degree of success in making its determination of whether the lodestar should be reduced. *Deal*, 2006 WL 2854463, *7, 2006 LEXIS 76324, at

*23 (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933). This is not to say that if only one of four claims is successful, only 25% of the hours requested should be granted. Rather, any necessary reduction should be based on a comprehensive view of the relief actually obtained. The United States Supreme Court accords the trial court broad discretion in making this determination:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. Therefore, a fee request may be reduced "if the relief awarded Plaintiff was limited in comparison to the scope of the litigation as a whole." *White v. Cadle Co*, 1999 U.S. Dist. LEXIS 15760, at *19 (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933). In *White*, for example, plaintiff sought to establish liability against two defendants, yet was only successful against one. The plaintiff's focus was on his claims for fraud and malice, which the jury rejected, and awarded him actual damages of $300 and statutory damages of $1400. The district court ordered a 30% fee reduction to account for the marginal success.

The Sixth Circuit has held that a lack of success in achieving a particular remedy through a particular legal framework is not dispositive. If overall satisfactory results are obtained, the plaintiff is entitled to 100% of the attorney's fees, so long as the unsuccessful claims are premised upon a common core of facts. *Phelan v. Bell*, 8 F.3d at 374–75. "Nor should the fees be reduced when the suit is successful against some of the defendants but not others if the theories of recovery are relat-

ed." *McHugh v. Olympia Entm't Inc.*, 37 Fed.Appx. 730, 740 (6th Cir.2002). Any reductions should be based on a broad view of the relief obtained, not a piecemeal parsing of successful and unsuccessful claims or motions.

Some district courts have denied fees for hours spent on class certification when the class was later decertified. See, e.g., *Asmar v. Benchmark Literacy Group, Inc.*, 2007 WL 925623, *3, 2007 U.S. Dist. LEXIS 22166, *9 (E.D.Mich., Mar. 28, 2007). But there, plaintiffs counsel **agreed** to decertify the class in order to pursue individual judgments. Similarly, in *Gradisher v. Check Enforcement Unit*, 2003 WL 187416, *7, 2003 U.S. Dist. LEXIS 753, *21 (W.D.Mich., Jan. 22, 2003), the court eliminated hours spent on class certification. But there, plaintiff achieved class certification, notice was sent, and plaintiff obtained a partial summary judgment of liability. Then, due to the de minimus net worth of the defendant, he requested the court to decertify the class. Given those facts, a reduction of the class-related fees was appropriate. And in *Webster v. Fulton County*, 112 F.Supp.2d 1339, 1354 (N.D.Ga.2000), the district court denied the hours because plaintiff was unsuccessful in seeking certification, but noted that the effort was "probably doomed from the start" given existing circuit authority.

The failure to achieve class certification in this case obviously did not detract from Plaintiff's overall success. While the class certification motion was not granted, the briefing directly concerned the essential facts of this claim, whether JB & R's form affidavit violated either the FDCPA or the OCSPA. This Court finds that time spent on class certification should not be subtracted simply because the motion was unsuccessful.

Plaintiff does not address the unfiled motion to strike in her Reply Memorandum. Without some facts explaining what this time represented or the circumstances surrounding the entries, this Court will exclude those hours. Felson's time is therefore reduced by 4.8 hours.

■ In addition, the Court rejects JB & R's argument that hours spent on Plaintiff's unsuccessful motion for summary judgment are not recoverable. That motion is not separable, and was premised on the common core of facts giving rise to Plaintiff's claims. The motion addressed the very crux of this suit, whether the JB & R affidavit violated the FDCPA and the OCSPA. The motion clearly was not frivolous, and the parties' competing motions served to narrow the issues for trial. Given the eventual jury verdict, the hours Plaintiff expended on summary judgment will not be excluded from the fee amount. Even if some of the motion was "boilerplate," as JB & R suggests, this Court finds the time spent preparing it to be quite reasonable.

This Court will deduct from Felson 4.8 hours spent on the motion to strike, reducing Felson's lodestar by $1,272.

### B. *Fee Enhancement*

The FDCPA states that a prevailing party may seek "reasonable" attorney fees. 15 U.S.C. § 1692k. A "reasonable" fee is typically the lodestar, but a multiplier or a divisor may be appropriate. Plaintiff argues that the circumstances of her case warrant the application of multiplier of 1.75. JB & R argues that the FDCPA does not permit fee enhancement at all, and this case does not merit an enhancement in any event.

■ The Supreme Court has held that when a fee-shifting statute permits the recovery of "reasonable" attorney's fees, a "strong presumption" arises in favor of awarding the lodestar. See *City of Burlington v. Dague*, 505 U.S. 557, 562, 112

S.Ct. 2638, 120 L.Ed.2d 449 (1992). Courts may apply multipliers in cases of "exceptional success," or where the lodestar is unreasonably low. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. JB & R correctly notes that, after *City of Burlington,* contingency risk alone is not sufficient to support a multiplier. And the Sixth Circuit has cautioned against the routine award of a multiplier based on some of the factors set forth in *Hensley,* given the Supreme Court's rejection of contingency enhancements in City of Burlington. See *Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 381–382 (6th Cir.1993), reversing a 1.75 enhancement granted in an ERISA case, based on contingency risk and the burdens placed upon counsel's small law office.

■ *Hensley* set forth twelve factors to apply in to determine whether a multiplier is appropriate:

(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714 (5th Cir.1974)). The Sixth Circuit permits these factors to be used either during the fee initial calculation or to evaluate a requested enhancement. *Paschal v. Flagstar Bank,* 297 F.3d 431, 435 (6th Cir.2002).

JB & R argues that *Hensley* addressed 42 U.S.C. § 1988, whose legislative history specifically references the factors listed above. The FDCPA lacks any such history, and so JB & R suggests there is no legal basis for an enhancement in this case. This argument ignores the Supreme Court's discussion in *City of Burlington,* which involved fee-shifting provisions under two environmental statutes. The Supreme Court noted that the statutes' "language is similar to that of many other federal fee-shifting statutes," and that "case law construing what is a 'reasonable' fee applies uniformly to all of them." *Id.,* 505 U.S. at 562, 112 S.Ct. 2638. While the Court did not specifically identify the FDCPA, the language is essentially identical to that used in the environmental statutes before the Court. The Sixth Circuit has held that an enhancement may apply to the fee-shifting provision of the False Claims Act, which permits recovery of "reasonable" attorney's fees—the precise language of the FDCPA. See *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 621 (6th Cir.2007). However, a multiplier request should be carefully considered, because several of the *Hensley* factors are subsumed within the lodestar and should not be counted twice.

Plaintiff cites the novelty and difficulty of the case, the skill needed to present her claims, the contingency risk, the amount involved and the results obtained, the experience, reputation, and ability of her attorneys, the undesirability of her case, and the importance to consumers of the jury's verdict, as factors supporting her request for a multiplier of 1.75.

### (1) *Novelty and Difficulty.*

■ "Cases of first impression generally require more time and effort on the attorney's part." *Johnson v. Georgia Highway Express,* 488 F.2d at 718. One court approved a 10% enhancement due to the novelty of the case—a Title VII sexual-

orientation discrimination claim at a time when such "discrimination in employment generally ha[d] not enjoyed favorable legal protection." *Quinn v. Nassau County Police Department*, 75 F.Supp.2d 74, 79 (E.D.N.Y.1999). Plaintiff asserts that this case is the first to challenge non-wage garnishments based upon form affidavits.

JB & R argues that Plaintiff's case is far from novel, depicting it as a run-of-the-mill FDCPA claim. But the raft of cases JB & R cites are FDCPA actions with marginal relevance to this particular claim. Although this Court considers many aspects of Plaintiff's case to be novel, the difficulty of prosecuting a novel claim is reflected in the lodestar, both in the number of hours and the rate charged. See *City of Burlington*, 505 U.S. at 562, 112 S.Ct. 2638.

### (2) *Skill Needed by Counsel.*

*Johnson* notes that "the trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. One court granted an enhancement because the attorney took the case blind, and proceeded to present it superbly in the face of adversity. See *Hollowell v. Gravett*, 723 F.Supp. 107, 110 (E.D.Ark.1989). Here, Plaintiff's counsel represented her well while facing determined opposition. But again, this factor is largely reflected in the lodestar.

### (3) *Contingent Fee.*

Plaintiff relies on Judge Posner's economic analysis of why contingent fees must be higher than normal hourly rates, to account for the risk premium inherent in contingent fee work. This argument, while economically intriguing, is legally foreclosed by *City of Burlington v. Dague*.

### (4) *Amount Involved and Results Obtained.*

This factor encompasses both the immediate award and the decision's influence on the law. *Johnson*, 488 F.2d at 718. In the Court's view, the jury's verdict of $49,603, which included statutory and actual damages, far exceeded reasonable expectations.

Due to the facts of her case, Plaintiff contends that the result will also effectuate far-reaching changes, forcing debt-collectors to adjust the way they conduct business. Such a change would require many courts or juries to render consistent verdicts, an eventuality which may not come to pass. Although the jury's verdict favors greater consumer protection when non-wage garnishments are utilized, the result is not so exceptional that the requested 1.75 enhancement should be awarded. See e.g. *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913 (S.D.Ohio 2001), granting a 150% multiplier to a solo practitioner who took an unpopular case (suing a county coroner for removing the plaintiff's deceased husband's corneas), and brought "to light a previously unrecognized cause of action," after many other attorneys declined to participate.

### (5) *Attorneys' Experience, Reputation, and Ability.*

This Court has no doubt that Felson and Shane are both experienced attorneys, well versed in prosecuting consumer and FDCPA actions. But this factor is also reflected in a reasonable hourly rate, and thus largely included in the lodestar. An attorney's reputation and skill may support an upward fee adjustment in that rare case where specific evidence demonstrates an exceptional quality of legal service, superior to that reasonably expected in light of the hourly rate. The Court finds this factor does not merit an enhancement.

(6) *Undesirability of the Case.*

Plaintiff's counsel asserts that this was not a desirable case. Difficulty in retaining counsel can support granting a multiplier, as noted in *Barnes v. City of Cincinnati,* 401 F.3d 729, 746 (6th Cir.2005), where plaintiff's counsel submitted affidavits from other local attorneys stating that few lawyers, locally or nationally, would take such a case (involving a transsexual's employment discrimination case against the local police department).

Here, Plaintiff submits affidavits from Mr. Cardosi, managing attorney of the Portsmouth office of the Ohio State Legal Services Association; from Mr. Icove, a Cleveland-based consumer law specialist; and from Mr. Olden, who for many years worked at Cincinnati's Legal Aid Society and is now in private practice. Mr. Cardosi states he has seen an increase in recent years of clients seeking assistance with post-judgment garnishments of exempt funds. He also states that the only private lawyers in Cincinnati he knows of that will accept contingent referrals from OSLSA for prosecuting debt collection complaints on behalf of his clients are Messrs. Felson and Shane. Mr. Icove is highly experienced in the field of consumer law. He believes the verdict rendered in this case is extremely important as a practical matter, because JB & R (one of the largest debt collection firms in Ohio) will have to "at least think about changing its high volume non-wage garnishment procedures" to take account of the fact that many debtors have only exempt funds. He also confirms that Felson and Shane are the only attorneys in southern Ohio who will accept contingent fee cases to prosecute FDCPA claims, even routine ones. Mr. Olden confirms Mr. Cardosi's experience in recent years of seeing more clients who have had exempt funds improperly garnished by creditors, and describes the extreme financial hardship such garnishments can impose on individuals who must survive on exempt funds, such as Social Security disability funds involved in this case. He also confirms that in his experience, Felson and Shane are the only lawyers in this area who are willing to accept contingent fee referrals to prosecute consumer claims against debt collectors.

As originally discussed in *Johnson,* this factor was initially intended to reward lawyers who took on unpopular civil rights or discrimination cases, and who suffered an unjustified loss of reputation or business as a result. *Johnson,* 488 F.2d at 719. No similar circumstances exist here. But, as Mr. Olden aptly notes, consumer statutes are passed to protect consumers. If consumers cannot find lawyers willing to take on their claims, especially under statutes like the FDCPA which have restricted ceilings on statutory damages, the statutes will not serve their intended function. The Court credits counsels' willingness to accept Plaintiff's representation in this matter, apart from their willingness to do so on a contingent fee basis, and believes this factor supports a fee enhancement.

The Sixth Circuit has cautioned the trial courts that a multiplier of 1.75, which is sought here, "... is near the upper end of what we consider 'reasonable.'" *Barnes v. City of Cincinnati,* 401 F.3d at 747, n. 4. The factors which this Court finds merit an enhancement in this case fall short of justifying the requested multiplier. This Court considers a multiplier of 10 per cent appropriate for the instant circumstances, as it reflects the novelty and difficulty of many issues that arose during the case and the trial, and counsels' willingness to prosecute this difficult FDCPA claim. While there is no assurance that the jury's verdict will have the wide-ranging ramifications that Mr. Icove predicts, it clearly will or should have some impact on debt collection practices.

If any multiplier is awarded, JB & R urges the Court to do so solely under the OCSPA. As the Court understands its argument, the Ohio Supreme Court has not revisited its decision in *Bittner v. Tri–County Toyota,* and the OCSPA multiplier issue, since the Supreme Court's 1992 *City of Burlington* opinion. JB & R asserts that it is therefore questionable that the Ohio Supreme Court would adhere to *Bittner* in view of the rationale of *City of Burlington.* JB & R also suggests that the Court should certify this question to the Ohio Supreme Court.

The Court declines the latter request. And as to first argument, *Bittner* is the controlling decision of the Ohio Supreme Court. The Sixth Circuit rejected an argument similar to JB & R's in *Davis v. Mutual Life,* 6 F.3d at 383, in which the Circuit reversed a fee enhancement awarded by the trial court on plaintiffs' federal RICO claim, because it was based on contingency risk and the burden placed on counsel's small office. However, the enhancement was permitted to stand under the OCSPA claim. Since *Davis,* the Ohio appellate courts have routinely applied *Bittner* to review fee enhancement requests; see, e.g., *Smith v. GMC,* 168 Ohio App.3d 336, 859 N.E.2d 1035 (Ohio App. 2006), citing *Bittner* and the factors set forth in former Ohio Disciplinary Rule 2–106(B). Those factors largely mirror the *Hensley* factors.

The Court therefore concludes that a 10% fee enhancement is permissible under the FDCPA and OCSPA, and is warranted by the facts discussed above.

### 4. Costs.

Both Messrs. Felson and Shane have attached ledger sheets to their affidavits attesting to the costs incurred which Plaintiff seeks to recover. JB & R complains that Plaintiff failed to submit a cost bill on the form generally used in this district, and asks the Court not to consider costs, or order Plaintiff to file a proper form of cost bill. Alternatively, it contends that some of the cost items should be disallowed.

Local Rule 54.1 governing taxation of costs, which JB & R quotes in their response memorandum, plainly states that a bill of costs shall be prepared on the Clerk's approved forms or on a pleading which is "substantially similar." The ledger sheets submitted by counsel are not a pleading, but they very clearly identify the costs and the purposes for which they were incurred. The Court sees no need to require Plaintiff to resubmit her rather modest cost request, to have the Clerk tax costs, and then engage in what would likely be another round of objections and briefing before this Court. As the Court is entering a final judgment concurrent with this order, there is no good reason to delay awarding costs.

However, JB & R is correct that only costs enumerated in 28 U.S.C. § 1920 may be recovered. See *Crawford Fitting v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), cited in *Mann v. Acclaim Fin. Servs.,* 348 F.Supp.2d 923, 932 (S.D.Ohio 2004). That statute limits costs recoverable to:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under Section 1923 of this title; and

(6) Compensation of court appointed experts, compensation of interpreters, and

salaries, fees, expenses, and costs of special interpretation services.

The Court concludes the following costs are recoverable:

Costs Listed by Felson:

| | | |
|---|---|---|
| Filing Fee | $ 350.00 | |
| Mizanin Reporting | 881.75 | (Cleveland depositions, Javitch and Rathbone) |

Costs Listed by Shane:

| | | |
|---|---|---|
| Slovin Deposition | $276.75 | (JB & R's expert) |
| Lee Deposition | 355.00 | |
| Javitch Witness Fee | 281.53 | (for trial) |
| Slovin Witness Fee | 61.15 | (for trial) |
| **TOTAL** | **$2,206.18** | |

The Court specifically finds that fees for the depositions taken of the two JB & R partners in Cleveland, for Plaintiff's deposition and for Mr. Slovin's deposition, are reasonable and should be taxed. The balance of the requested costs (for mail, parking, lunches, travel expenses, etc.) are disallowed.

5. *Plaintiff's Supplemental Fee Motion* (Doc. 191).

Plaintiff's supplemental motion seeks an award of fees for time spent from February 7, 2008 through May 30, 2008, as reflected on the time records attached to the Felson and Shane affidavits. Felson states that he increased his hourly billing rate to $285 and asks that these additional hours be paid at his new higher rate.

JB & R opposes this motion (Doc. 194), adopting its arguments to the original fee motion. The Court will not revisit these issues to determine the reasonableness of the supplemental request. As the Court concluded with respect to the original petition, Plaintiff has standing to seek fees, and her counsel are entitled to recover reasonable fees in this matter.

The Court will not award fees at Felson's increased hourly rate, an approximate 7.5% increase over his previous hourly fee. In the absence of any substantive explanation of this increase, the Court will award supplemental fees for Felson's time at the same rate awarded above, $265.

JB & R also objects to Felson's time entry on February 25, 2008, and asks the Court to separately evaluate hours spent on the fee petition. Plaintiff has explained the challenged time entry and the Court rejects JB & R's request to eliminate that entry.

 Absent unusual circumstances, a reasonable award of fees for preparing a fee petition after a trial is five percent of fees incurred in the main case. See *Coulter v. Dep't. Of Transp. of Tenn.*, 805 F.2d 146, 151 (6th Cir.1986). According to JB & R's calculations (see Doc. 194 at p. 5), Felson spent 39.7 hours on the fee issue. These hours, combined with the 11 hours included in the original fee motion, represent more than five percent of Felson's total hours on the case (409). However, the Court notes that JB & R's opposition to the fee petition was over 40 pages, and cited 98 cases. JB & R challenged Plaintiff's standing to collect fees, and attacked counsels' fee agreement as unconscionable. It is reasonable to expect that Plaintiff's counsel would have to spend more than the normally anticipated amount of time to respond to this lengthy, broad-based attack on the request for statutory fees. The Court will not disallow any of the requested hours spent on the fee issue, even though they exceed the general five percent guideline, because this case does present unusual and exceptional circumstances warranting a higher award.

The balance of the additional Felson hours dealt with the two, very lengthy post-trial motions filed by JB & R. There is no specific objection to any of these entries other than discussed above, and the Court finds this time to be reasonable.

With regard to Shane's supplemental fee request, he states he has spent an additional 3.7 hours on the case. However, he also states that he discovered a duplicate 4–hour entry for January 14, 2008, which

was included in the original petition. Therefore, he does not seek any additional fees and requests the Court to deduct 0.3 hours from his original request. JB & R does not object to this reduction.

In sum, the fees to be awarded are:

| | Felson | Shane |
|---|---|---|
| Lodestar | $87,795 | $27,475 |
| Adjustments | (1,272) | (75) |
| | (4.8 hrs @ $265) | (0.3 hrs @ $250) |
| Adjusted Fees | 86,523 | 27,400 |
| Multiplier (1.10%) | $95,175 | 30,140 |
| TOTAL FEES: | $125,315.30 | |
| COSTS: | $ 2,206.18 | |

\* \* \*

6. *Motion for Leave to File.* Finally, JB & R seeks leave to file a supplemental opposition to the fee motions. (Doc. 192) JB & R argues that Plaintiff has misrepresented the facts concerning pre-trial settlement negotiations. It also continues to question the validity of Plaintiff's fee agreement. The Court denies the motion. As noted above, the Court is well aware that more than $250 was offered to the Plaintiff to settle the case. The Court sees no need for any additional briefing on the fee agreement issue.

## CONCLUSION

Plaintiff's motion for attorney fees (Doc. 152) and her supplemental motion (Doc. 191) are granted to the extent discussed in this Order. Plaintiff is awarded attorney fees in the amount of $125,315.30, and costs in the amount of $2,206.18. Defendant's motion for leave to file a supplemental opposition (Doc. 192) is denied.

THIS CASE IS CLOSED.

SO ORDERED.