ALTENBERND, Judge.
DISH Network Service L.L.C. (“DISH”) appeals a final judgment in a consumer debt collection practices lawsuit under the Florida Consumer Collection Practices Act (“FCCPA”). See §§ 559.55-.785, Fla. Stat. (2002). The judgment awards James Myers $5000 in actual damages, $1000 in statutory damages, $16,933.77 in costs, and $176,992.64 in attorneys’ fees. DISH challenges only the award of fees.
We conclude that the trial court erred by including travel time in its calculation of the lodestar fee award. It also erred in applying a contingent-fee multiplier of 2.0 that would have been prohibited if the trial court had given “due consideration and great weight” to the civil remedies available under the federal Fair Debt Collection Practices Act (“FDCPA”). See § 559.77(2), (5); 15 U.S.C. § 1692 (2000). Accordingly, we reverse and remand for entry of an order awarding fees based on the corrected lodestar amount alone.
I. ANATOMY OF A SMALL CLAIMS LAWSUIT RUN AMOK
In November 1999, Mr. Myers signed up for service with DISH. For whatever rea *74 son, in March 2001 he decided to terminate his service before the end of the contract period. From that point until about July 2002, he had ongoing accounting issues with DISH. On several occasions, DISH charged his credit card with amounts he claimed he did not owe. There is little question that this experience was very unpleasant for Mr. Myers and that DISH did not handle the matter well.
DISH maintains that it reimbursed Mr. Myers for most of his losses immediately after he retained an attorney. It claims that Mr. Myers sustained actual monetary losses of less than $15. Mr. Myers disagrees that he was reimbursed and claims that his actual monetary losses were closer to $500.
In February 2003, Mr. Myers’ attorneys filed a small claims action in Pasco County Court seeking damages within the jurisdictional limit of that court. The claim contained two theories. First, Mr. Myers alleged that DISH willfully engaged in conduct that could reasonably be expected to abuse or harass him or a member of his family in violation of section 559.72(7). Second, he alleged that DISH attempted to collect a debt while knowing that it was not a legitimate debt in violation of section 559.72(9).
DISH answered this claim and counterclaimed for about $240 that it maintained Mr. Myers owed as a result of terminating the contract early. Between mid-2003 and late 2006, little activity occurred in the court file. During that time, Mr. Myers unsuccessfully attempted to refer the matter to private mediation, and DISH voluntarily dismissed its counterclaim. Outside of the record, the parties apparently engaged in limited discovery and settlement efforts.
In mid-2007, Mr. Myers sought to amend his claim to seek punitive damages and also filed a motion and affidavit to transfer the claim to circuit court on grounds that his damages exceeded the jurisdictional limit of county court. The county court transferred the case to circuit court in July 2007.[1] After an effort to mediate the case in circuit court, Mr. Myers filed a witness and exhibit list in October 2008 with forty witnesses, including a psychiatrist, Dr. Walter Afield. This caused DISH to request a compulsory mental examination with another expert. Eventually, Mr. Myers was sent to a psychologist, Dr. Randy Otto, for that compulsory examination.
The parties tried this case to a jury for two days in September 2009. Our record does not contain a complete transcript, but both experts testified. Dr. Afield testified that the debt collection experience from 2001 to 2002 caused Mr. Myers to experience post-traumatic stress syndrome and depression. He explained that Mr. Myers had had significant psychological issues as recently as 2009, but he did not expressly state that these recent conditions were brought on by the debt collection experience. Dr. Otto testified that Mr. Myers’ observable psychological conditions were more likely caused by other traumatic events in his life, which we will not detail in this opinion.
In closing argument, Mr. Myers’ attorney asked the jury for $680 in actual monetary damages, $12,000 for emotional distress, and $36,000 for psychiatric treatment. His efforts to obtain punitive damages did not reach the jury. Ultimately, the jury found that DISH had not attempted to collect a debt while knowing *75 that it was not a legitimate debt but found that DISH had willfully engaged in conduct that could reasonably be expected to abuse or harass Mr. Myers or a member of his family in violation of section 559.72(7). It awarded Mr. Myers precisely $5000 for this statutory violation.[2] The verdict suggests that the jury largely or completely rejected any claim based on a resulting psychological disorder.
Following the verdict, Mr. Myers’ attorneys filed a motion for fees and costs. Relying on the guidelines in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), the motion sought to establish a lodestar fee amount of $89,000, based primarily on 250 hours of time by Mark Tischhauser at an hourly rate of about $350.[3] Mr. Myers’ attorneys asked the court to enhance the lodestar fee award using a contingency multiplier of 2.5. Thus, the attorneys were seeking fees of approximately $222,500. The motion also asked for $17,500 in costs, including $5200 for deposition transcripts and $9400 for Dr. Afield’s expert witness fees.
Ultimately, the court conducted a lengthy hearing on the issues of attorneys’ fees and costs, aspects of which we will discuss later in this opinion. DISH argued that the fees and costs were excessive and that the multiplier was unwarranted or unauthorized. Two attorneys testified as fee experts, and Mr. Myers testified about his efforts to retain an attorney. Because the hearing lasted longer than expected, the parties filed their final arguments as lengthy memoranda of law. The trial court then issued an order on the fees and costs. It accepted the hourly rates and the amounts of time for almost all of the entries on the submitted billing. It decided that a multiplier of 2.0 was appropriate and awarded fees of $176,992.64. It awarded costs of $16,933.77. The reason for the approximately $700 difference in the costs awarded versus the costs requested is not clear from our record.
II. THE ECONOMICS DISCOURAGING SETTLEMENT OF SMALL CLAIMS LAWSUITS IN WHICH ONLY THE PLAINTIFF IS ENTITLED TO STATUTORY ATTORNEYS’ FEES AS A PREVAILING PARTY
Undoubtedly, there are many reasons why this seemingly ordinary lawsuit transformed from a case that could be resolved ■with a total expenditure of a few thousand dollars into one in which the judgment with attorneys’ fees and costs totals almost $200,000. That total does not include the fees DISH incurred in defending the case, the fees and costs associated with the determination of attorneys fees’ in the trial court, or the fees and costs generated by this appeal. We are not prepared to place blame for this noneconomic outcome on any party. If there is blame, there is surely enough to spread among many participants.
But it should not be overlooked that Mr. Myers is recovering only $6000 after all of the time involved in this case and after all of the prodding and poking into his private life. His expert, whose opinion the jury apparently did not accept, is recovering more than Mr. Myers, and his attorneys are recovering thirty times more than he is.
*76 It also should not be overlooked that, prior to trial, DISH made offers to settle that would have resulted in a substantially greater award to Mr. Myers than he is receiving by this judgment. However, because his attorneys were working under a traditional contingency fee agreement, those offers — which did not include a separate award of attorneys’ fees — would have provided little compensation for Mr. Myers’ attorneys after they had invested substantial time in the lawsuit.
This case demonstrates an economic phenomenon that is probably an unintended consequence of a statutory award of attorneys’ fees under a statute like section 559.77(2).[4] Under this statute, if the plaintiff recovers any amount from the jury, the defendant sustains an “adverse adjudication” that triggers the right for the plaintiffs attorneys’ to receive “court costs and reasonable attorney’s fees.” § 559.77(2). The plaintiff risks an award of fees only in the rare case where the lawsuit “fails to raise a justiciable issue of law or fact.” Id.
In a typical contingency fee case, the plaintiffs attorney will recover a fee based on a percentage of the total recovery. Thus, the monetary success of the client and the attorney are closely interrelated. By contrast, in this type of statutory fee case where the damages are relatively small, as the lawsuit progresses, it quickly becomes a larger monetary asset for the law firm than for the client. At $700 per hour under the award in this case, the law firm’s monetary interest in this case exceeded the interest of its client within a dozen hours of work.
By the time the lawsuit approaches trial, so long as the defendant is not making offers to settle that include a separate resolution of the fee issue, a reasonable offer for the client under a contingency contract is unlikely to be a reasonable offer from the perspective of the attorney. For example, in this case, immediately before trial an offer of $30,000 would have provided a gross award to Mr. Myers of $20,000 and a net award of about $10,000. He would have come out ahead. But the attorneys would have recovered only $10,000 after investing more than 200 hours. If the attorneys know that they can possibly recover more than $100,000 in attorneys’ fees by going to trial for two days, then mathematically they have an incentive at that point to go to trial even in a case where the chance of victory is quite small.
There is great merit in a system that creates “private attorneys general”[5] to handle consumer claims, but the current structure seems to place private lawyers in a position where they have an economic incentive to pursue cases through to the end of a jury trial even when the real attorney general would never do so.
A solution to this economic problem is beyond the power of this court. A solution, if it exists, requires a change in substantive law by the legislature or in procedural law by the Florida Supreme Court. We use this case to describe the problem simply because it is such a good example.
From the perspective of the judiciary, the problem could be addressed, in part, if courts required offers from defendants in these cases to include a damages settle *77 ment to be paid to the plaintiff and a separate fee settlement to be paid to the plaintiffs attorneys. Although this change would eliminate the inherent conflict between the plaintiff and his or her attorney created by lump sum offers to settle this type of case, it would not eliminate all of the economic disincentives to settle these small lawsuits. Somehow we need to create a solution that continues to provide adequate protection for consumers, who must rely on private attorneys general for this legal work involving claims of small monetary value, without simultaneously creating undue incentives that hinder resolution of these claims prior to trial.
III. THE TRIAL COURT’S ERROR IN CALCULATING THE LODESTAR AND IN FAILING TO GIVE DUE CONSIDERATION AND GREAT WEIGHT TO THE COMPARABLE FEDERAL LAW
The FCCPA is very similar to the federal FDCPA. As a result, the Florida Legislature expressly requires that courts apply and construe the civil remedies provision in the Florida act with an eye to the federal law. The state law does not mandate that the state courts obey federal precedent. Rather, section 559.77(5) provides that “[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.” (Emphasis added.)
In the trial court and in this court, DISH argues that the hourly rate in determining the lodestar amount should be capped at $250 per hour and that no contingency multiplier should be used because these are the rules that would apply to a similar case in federal court. DISH also argues that the number of hours the trial court used to calculate the lodestar fee was not reasonable because it included travel time and time for duplicative and unnecessary tasks. Although we are not convinced that the trial court erred in awarding an hourly rate in excess of $250, we conclude that a multiplier would not be used in federal court and that the trial court’s order does not demonstrate that it gave any weight, much less great weight, to the applicable federal law. We also conclude that the trial court erred in including travel time in the lodestar calculation.
A. The trial court did not abuse its discretion in determining that $350 per hour was a reasonable rate for purposes of the lodestar calculation.
The Florida Supreme Court adopted the federal lodestar method as the starting point for determining reasonable attorneys’ fees. Fla. Patient’s Comp. Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985). The lodestar method requires the trial court to consider certain factors[6] in determining the number of hours reasonably expended on the litigation and the reasonable hourly rate for the legal services provided. See Quanstrom, 555 So.2d at 830; Rowe, 472 So.2d at 1150. In Florida, the factors to consider vary based on the nature of the case. See Quanstrom, 555 So.2d at 830, 834-36. It is undisputed that this case is a “public policy enforcement case” in which the trial court must consider twelve factors[7] in determining *78 the fee, which are based on the factors relied on by federal courts in similar cases. See id. at 834 (quoting Blanchard v. Bergeron, 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). We conclude that a trial court that relies on this methodology required by the Florida Supreme Court while considering fee awards in similar local federal cases has satisfied its obligation under section 559.77(5), and this court cannot overrule the trial court’s determination as to the lodestar amount absent an abuse of discretion. See First Fed. Sav. & Loan Ass’n of the Palm Beaches v. Bezotte, 740 So.2d 589, 590 (Fla. 4th DCA 1999).
Here, DISH does not assert that the trial court did not adhere to the correct methodology in calculating the lodestar amount to be $88,496.32. Rather, DISH argues that the trial court erred in concluding that a reasonable hourly rate for the majority of legal services provided in this Pasco County FCCPA case was $350 when federal courts have capped hourly rates in FDCPA cases at $250 per hour[8] and there is no justification for the higher hourly rate. Although we agree that a trial court determining attorneys’ fees in an FCCPA case should give “due consideration and great weight” to the hourly rates federal courts have found to be reasonable in FDCPA cases, we hesitate to allow federal courts to become the arbiter of hourly rates in state court. Moreover, our research of hourly rates in comparable federal cases revealed that the Middle District of Florida has found rates of $300, $350, and $394 per hour to be reasonable. See Zachloul v. Fair Debt Collections & Outsourcing, No. 8:09-CV-128-T-27MAP, 2010 WL 1730789 (M.D.Fla. Mar. 19, 2010); Stone v. Nat’l Enter. Sys., No. 6:08-cv-1523-Orl-22GJK, 2009 WL 3336073 (M.D.Fla. Oct. 15, 2009); Rodriguez v. Fla. First Fin. Grp., Inc., No. 6:06-cv-1678-Orl-28DAB, 2009 WL 535980 (M.D.Fla. Mar. 3, 2009). Therefore, we cannot conclude that the trial court abused its discretion in finding that $350 per hour was a reasonable hourly rate for purposes of the lodestar calculation.
B. The trial court erred in including travel time for purposes of the lodestar calculation.
With regard to the number of hours reasonably expended on this litigation, we agree with DISH that the trial court erred in including approximately eleven hours of travel time in the lodestar fee calculation. In Florida, the longstanding rule is that an award of attorneys’ fees should not include travel time “without proof that a competent local attorney could not be obtained.” Mandel v. Decorator’s *79 Mart, Inc. of Deerfield, Beach, 965 So.2d 311, 315 (Fia. 4th DCA 2007). In this case, there was no competent, substantial evidence to support a finding that Mr. Myers could not obtain a competent Pasco County lawyer to handle his case. The only evidence regarding the availability of local counsel was Mr. Myers’ testimony that he spoke with two or three Pasco County attorneys before he was referred to Mr. Tischhauser’s firm in Hillsborough County. This is not a complex case that would require the expertise of a board certified attorney. Although FCCPA cases require an attorney to be well-versed in the relevant law, most attorneys could obtain the requisite legal knowledge with a few hours of study. With this in mind, many competent Pasco County attorneys could have handled this case. Accordingly, the trial court must recalculate the lodestar fee without including travel time.
We conclude that the trial court’s determination regarding the remaining hours expended on this litigation is supported by the evidence. Although the number of hours is high, this case was active for several years and was tried to a jury for two days. There are no obvious entries of duplicative, excessive, or unnecessary time in this file.
C. Deference to federal law sharply limits the trial court’s authority to increase the lodestar amount by a contingency multiplier.
Section 559.77 is a fee-shifting statute, which authorizes the trial court to award reasonable attorneys’ fees and costs to the prevailing party. In general, since the United States Supreme Court’s 1992 ruling that “enhancement for contingency is not permitted under ... fee-shifting statutes,” the federal courts have not permitted a contingency multiplier in cases involving such statutes. City of Burlington v. Dague, 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In Perdue v. Kenny A. ex rel. Winn, — U.S.-, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), the Supreme Court emphasized that “enhancements” to the lodestar “may be awarded in ‘ “rare” ’ and ‘ “exceptional” ’ circumstances.” [9] Id. at 1673 (quoting Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); Blum v. Stenson, 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Moreover, the Supreme Court stated that enhancements “may not be awarded based on a factor that is subsumed in the lodestar calculation.” Perdue, 130 S.Ct. at 1673 (citing Dague, 505 U.S. at 562-63, 112 S.Ct. 2638; Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 726-27, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (plurality opinion); Blum, 465 U.S. at 898, 104 S.Ct. 1541). Significantly, the Florida Supreme Court has noted that the existence of a contingent fee agreement “is but one of the factors to be considered” in *80 determining the reasonable attorneys’ fee in public policy enforcement cases such as this one. Qucmstrom, 555 So.2d at 834.
In the only post-Da^e FDCPA case cited by Mr. Myers in which a federal court actually awarded a small enhancement to the lodestar, the enhancement was not based on the contingent nature of the fee agreement but rather on the attorney’s willingness to prosecute a difficult case and the impact the case would have on debt collection practices. See Lee v. Javitch, Block & Rathbone, LLP, 568 F.Supp.2d 870, 881 (S.D.Ohio 2008). In that same case, the district court noted that a contingency enhancement was “legally foreclosed” by Dague. Id. Indeed, other post-Dague FDCPA cases involving attorneys’ fees either do not mention contingency enhancements at all or note that federal courts may not award contingency enhancements under federal fee-shifting statutes. See, e.g., Bogner v. Masari Invs., LLC, No. CV-08-1511-PHX-DGC, 2010 WL 2595273 (D.Ariz. June 24, 2010); Zachloul, 2010 WL 1730789; Stone, 2009 WL 3336073; Rodriguez, 2009 WL 535980; Hagan v. MRS Assocs., Inc., No. Civ.A. 99-3749, 2001 WL 531119, at *10 (E.D.La. May 15, 2001); Clark v. Capital Credit & Collection Servs., Inc., 561 F.Supp.2d 1213, 1218 n. 2 (D.Or.2008). Thus, there is little doubt that if a case similar to this one were filed in the local federal court, the prevailing attorney would not receive a fee enhanced by a contingency multiplier.
The trial court has provided no explanation as to why a multiplier would be necessary to compensate attorneys for representing consumers in debt collection practices cases in county or circuit court as compared to federal district court. We are hard pressed to provide even a single reason why lawyers need to be encouraged to file these actions in state court rather than federal court.
In justifying the use of the multiplier, the trial court explained:
It also seems important to note that the possible use of a fee multiplier should also have the effect of encouraging defendants in FCCPA case[s] to be even more careful to avoid the potentially large outlays created by fee multipliers. The Defendant is also free to litigate such cases as vigorously as it desires and to insist upon a determination by the court. Unfortunately, nothing in life seems to come without a cost of some type. In this case, the cost of vigorously litigating the Plaintiffs claim and instituting a counterclaim against the Plaintiff, is the payment of a greater fee, which is then enhanced by a fee multiplier. To allow the Defendant to assume the posture that the Defendant has assumed in this case without requiring such a “cost” would encourage the rejection of claims ultimately determined to be meritorious and would lessen the likelihood of a pool of knowledgeable Plaintiffs’ lawyers who would be willing to risk them time in the search for merit in such cases.
It is noteworthy that the legislature chose to provide a $1000 statutory damage award that is essentially a penalty for violating the statute. See § 559.77(2). Neither state nor federal case law authorizes a trial court to use a multiplier as an extra “cost” for the defendant. Thus, if penalizing DISH for defending this case is the reason the trial court has chosen to disregard the comparable federal law, it is an inappropriate reason. Accordingly, we conclude that the trial court erred in awarding a contingency multiplier, at least in the absence of a well-articulated basis to demonstrate why the federal prohibition against contingency enhancements should not apply in this case.
*81 IV. CONCLUSION
For the foregoing reasons, we affirm all aspects of this case except for the award of attorneys’ fees. We reverse that award and remand for entry of an order awarding fees based on the lodestar amount alone, which the trial court must recalculate without including travel time.
Affirmed in part, reversed in part, and remanded.
DAVIS and WALLACE, JJ., Concur.

. As of the date the case was transferred to circuit court, Mr. Myers' attorneys had spent approximately 116 hours on the case, which at the lodestar hourly rate of $350 would have resulted in a fee of approximately $40,600.

. The trial court grants the statutory award of up to $1000 as a matter of course, and thus the statutory damages were not submitted to the jury for determination. See § 559.77(2).

. Associates in the law firm billed a small amount of time in this case at a lower hourly rate, but there is no need to detail those facts in this opinion.

. This same problem appears to exist with statutory fees awarded in personal injury protection ("PIP”) lawsuits. See, e.g., Progressive Express Ins. Co. v. Schultz, 948 So.2d 1027 (Fla. 5th DCA 2007) (where the disputed PIP benefit at issue amounted to $1,315.30 and the lodestar attorneys' fees amounted to $77,500).

. See Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991).

. In Florida, the factors trial courts are to consider can be found in rule 4-1.5 of the Rules Regulating the Florida Bar. See Quan-strom, 555 So.2d at 830 n. 3.

. The twelve factors to be considered in public policy enforcement cases are as follows:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal ser *78 vice properly; (4) die preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Quanstrom, 555 So.2d at 834 (quoting Blanchard v. Bergeron, 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). The factors significantly overlap with the eight criteria set forth in Disciplinary Rule 2-106(b) of The Florida Bar Code of Professional Responsibility, which lives on as rule 4-1.5. See Rowe, 472 So.2d at 1150.

. DISH cited two 2005 cases from the Southern District of Florida for this proposition. See Bernard v. Int’l Portfolio Mgmt., Inc., No. 04-60671-CIV-ZLOCH, 2005 WL 1840157 (S.D.Fla. July 25, 2005); Casden v. JBC Legal Grp., P.C., Nos. 04-60669-Civ-MARRA, 04-60669-Civ-SELTZER, 2005 WL 165383 (S.D.Fla. Jan. 7, 2005).

. In Perdue, the United States Supreme Court concluded that enhancements of the lodestar fee could be awarded in rare and exceptional circumstances only if there is "specific evidence that the lodestar fee would not have been ‘adequate to attract competent counsel.’ ” Perdue, 130 S.Ct. at 1674. Those rare and exceptional circumstances, as discussed in Perdue, are as follows: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney’s true market value,” (2) where "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted,” or (3) where "an attorney’s performance involves exceptional delay in the payment of fees." Id. at 1674-75. Mr. Myers did not present specific evidence that the lodestar fee was not sufficient to attract competent counsel. Moreover, none of these exceptional circumstances apply in this case.